**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JACQUES WALKER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WEXFORD HEALTH SOURCES INC.,** ***et al.*****,**<br><br>**Defendants.** | **Case No. 25-cv-00115-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendant Wexford Health Sources, Inc. (Wexford). (Doc. 30, 31). Wexford argues that Plaintiff Jacques Walker failed to exhaust his administrative remedies prior to filing this lawsuit. Plaintiff has filed a response in opposition. (Doc. 39). For the following reasons, the Motion for Summary Judgment will be denied.

## BACKGROUND

Plaintiff Jacques Walker, an inmate of the Illinois Department of Corrections (IDOC) incarcerated at Shawnee Correctional Center, initiated this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. In the Amended Complaint,[1] Plaintiff states that he suffers from sickle cell anemia, and he alleges that on May 5, 2024, while housed in the segregation unit at Shawnee, he began experiencing shortness of breath and extreme pain through his body. (Doc. 38, p. 4). Plaintiff asserts that he and neighboring inmates complained to Defendants of his

[1] Although the Amended Complaint was filed after the Motion for Summary Judgment, the Court found that the Motion was not moot. (Doc. 35).

symptoms and requested medical assistance, but Defendants ignored the requests and accused Plaintiff of "faking it." (*Id.*). The following morning, Plaintiff was discovered in his cell unresponsive, unconscious, and without a pulse. (*Id.* at p. 5). Plaintiff was taken to the emergency room at Barnes Jewish Hospital, in St. Louis, Missouri, where he underwent multiple procedures and surgeries. (*Id.* at p. 5, 6). Plaintiff asserts that according to the medical records, he suffered from a "sickle cell crisis," which resulted in acute respiratory failure, acute encephalopathy, a stroke, and altered mental status. (*Id.* at p. 5). At Barnes, Plaintiff was also diagnosed with anoxic brain damage, cerebral infarction, acute respiratory failure with hypoxia, acute kidney failure, hyperosmolarity, and hypernatremia. (*Id.* at p. 6).

On May 24, 2024, Plaintiff was transferred to Kindred Hospital in Chicago, Illinois. (Doc. 38, p. 6). Following a neurological assessment, Plaintiff asserts that the doctor recorded that Plaintiff's speech was difficult to understand; Plaintiff was unable to follow a conversation and required cues; Plaintiff needed orientation to person, place, and time; and Plaintiff was completely immobile. (*Id.*).

Plaintiff brings Counts 1 against Defendants Ford, Law, Neibel, Flowers, Messer, Bristow, Perruquet, Sharp, Fisher, Harrelson, and Murphy for violations of his constitutional rights under the Eighth Amendment for deliberate indifferences to his serious medical needs. He also brings Count 2 against Wexford under 42 U.S.C. § 1983 for deliberate indifferent policies and procedures that resulted in inadequate medical care.

On September 18, 2025, Wexford filed a Motion for Summary Judgment on Exhaustion. (Doc. 30). Wexford argues that Plaintiff failed to exhaust his administrative remedies prior to initiating this suit, as is required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997e(a). Plaintiff opposes the Motion. (Doc. 39).

## LEGAL STANDARDS

Summary judgment is proper if the moving party can demonstrate, through pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and that, as a result, they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681–82 (7th Cir. 2014).

The moving party bears the burden of establishing that no material facts are in genuine dispute and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *Celotex Corp.*, 477 U.S. at 322–24. "Inferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (internal citation omitted).

Wexford moves for summary judgment arguing that Plaintiff failed to exhaust administrative remedies prior to initiating this lawsuit. Because Plaintiff is in the custody of IDOC, his lawsuit is governed by the provisions of the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that no "action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Additionally, exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Prisoners need only exhaust "available remedies, not remedies that are unavailable." *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023). Whether a remedy is available is a fact-specific inquiry that generally considers, among other factors, whether an ordinary prisoner in the plaintiff's situation could discern or navigate the grievance process, whether prison staff thwarted a plaintiff's ability to utilize the process, or whether the plaintiff was physically or mentally unable to utilize the process. *See Ross v. Blake,* 578 U.S. 632, 648 (2026); *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011). It is well established that for a remedy to be available, "it must be capable of providing the inmate 'some relief.'" *Gilman v. Byrd*, No. 24-1951, 2025 WL 400028, at *2 (7th Cir. Feb. 5, 2025) (citing *Thornton v. Snyder*, 428 F.3d 690, 696 (7th Cir. 2005)), and cannot operate "as a simple dead end," *Ross*, 578 U.S. at 643. "In short, if one has no remedy, one has no duty to exhaust remedies." *White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015).

## ANALYSIS

It is undisputed that there was a grievance process at Shawnee during the relevant time periods and that Plaintiff did not file a grievance regarding his claims in this case. The issue is whether the process was in fact available to Plaintiff.

Plaintiff first argues that the Motion for Summary Judgment should be denied because

there is a genuine issue of material fact regarding whether Plaintiff was advised of and understood the grievance process in the first place. (Doc. 39, p. 8). Plaintiff states that Wexford relies only on speculation and conjecture to establish that Plaintiff was fully informed of what grievance procedures were in place at Shawnee and how to follow them. (*Id.*). Additionally, Plaintiff contends that there is no evidence that Plaintiff understood whatever had allegedly been told him regarding the grievance procedures. (*Id.*). Because Wexford has not come forward with admissible evidence to establish that Plaintiff knew of and understood the grievance procedures, Plaintiff argues the Motion should be denied. (*Id.*).

The Court finds this argument not well taken. Based on the record, Plaintiff was informed about the grievance procedures. According to the Cumulative Counseling Summary entry dated January 31, 2024, Plaintiff was "provided with an Orientation Manual" and "grievance procedures [were] explained" during the offender orientation program. (Doc. 31-5, p. 10). Additionally, there is a signed copy of a form titled "Orientation Receipt," confirming that Plaintiff received a copy of the Orientation Manual and completed the offender orientation program. (*Id.* at p. 6). Plaintiff does not refute the record, and he does actually argue that his failure to grieve the allegations in this case was because he was not adequately informed of the process. He appears to only take issue with the insufficiency of Wexford's evidence, and it is not clear why Plaintiff believes the explanation of the grievance procedures given on January 31, 2024, during the orientation program was not reasonable. Notably, the "PLRA does not excuse a failure to exhaust based on a prisoner's ignorance of administrative remedies, so long as the prison has taken reasonable steps to inform the inmates about the required procedures." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018).

Plaintiff has not created a genuine dispute of fact simply by arguing that Wexford failed to adequately establish that he knew of and understood the grievance procedures without any support

in the record. *See Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (in responding to a motion for summary judgment, the nonmovant cannot rest on the pleadings or mere allegations to overcome the motion; instead, it must submit "specific, admissible evidence showing that there is a genuine dispute of material fact for trial"). The Court therefore finds there is no factual dispute regarding whether Plaintiff's remedies were unavailable based on the argument that Plaintiff did not understand the grievance process after an explanation was given. *See Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) (the PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him"); *Glines v. Butalid*, No. 18-CV-01444-SMY-RJD, 2020 WL 3405705, at *6 (S.D. Ill. Mar. 20, 2020) ("the availability of administrative remedies is not a subjective inquiry dependent on the knowledge of the prisoner in question").

Plaintiff next argues that the Motion for Summary Judgment should be denied because there is a genuine issue of material fact regarding whether he was required to file a grievance at all since he was hospitalized for over 60 days following his sickle cell anemia crisis and could not file a grievance by the required deadline. (Doc. 39, p. 9).

Section 504.810 of the Illinois Administrative Code provides that a grievance must be filed "within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance. However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." 20 ILL. ADMIN. CODE §504.810(a). As the grievance procedures allow grievances to be filed outside the deadline if an inmate can show good cause for doing so, the fact that Plaintiff was hospitalized for over 60 days following his sick cell anemia crisis does not automatically render the grievance process unavailable and excuse him from filing a grievance. *See Wilborn v. Ealey*, 881 F.3d 998, 1005 (7th Cir. 2018); *Barrett v. Bridges*, No. 24-

1411, 2025 WL 342860, at *3 (7th Cir. Jan. 30, 2025) (finding that the plaintiff, who had been in the hospital, had not shown the grievance process was unavailable where he did not submit evidence of incapacitation and did not file as soon as reasonably possible). Plaintiff does not point to any case law or statute to the contrary. Thus, there is not a factual issue regarding whether the grievance process was unavailable solely based on the length of his hospital stay.

And finally, Plaintiff argues there is a genuine issue of material fact with respect to whether he was able to utilize the grievance process due to his physical, mental, and cognitive impairment after his sickle cell anemia crisis on May 5-6, 2024. (Doc. 39, p. 9). Wexford argues that Plaintiff was capable of submitting grievances upon his return to Shawnee after his hospitalization and supports its argument by providing copies of grievances Plaintiff filed on September 20, 2024, and October 22, 2024. (*See* Doc. 31-5, p. 2, 4). Wexford also points to the entries in the Cumulative Counseling Summary to demonstrate Plaintiff's abilities to advocate and file grievances for himself. (*See Id.* at p. 9).

"In numerous instances, the Seventh Circuit has found that a remedy is not available when an inmate is physically or mentally unable to pursue it." *Rodriguez v. Monti*, No. 3:23-CV-02685-SMY, 2026 WL 507319, at *6 (S.D. Ill. Feb. 24, 2026) (citing *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011); *Lanaghan v. Koch*, 902 F.3d 683 (7th Cir. 2018); *Weiss v. Barribeau*, 853 F.3d 873, 874–75 (7th Cir. 2017)). The problem here is that Plaintiff does not properly support his assertions that he was physically and mentally unable to exhaust Shawnee's grievance system with citations to the record. Plaintiff admits to Wexford's Statement of Facts that he submitted four grievances over the course of a year, after he returned to Shawnee from the hospital (*see* Doc. 39, p. 4-7), but other than citing to his Amended Complaint, he offers no evidence that he was incapable of completing the process, such as providing copies of the medical records he references

or even an affidavit. As mentioned above, as the non-moving party, Plaintiff cannot solely rest on his pleadings to establish a genuine triable issue. *See Arce v. Chicago Transit Auth.*, 193 F. Supp. 3d 875, 880 (N.D. Ill. 2016) ("The complaint is not admissible evidence." (citing *Celotex Corp.*, 477 U.S. at 324)). Plaintiff also fails to comply with Local Rule 56.1 and does not provide a statement of additional material facts with citations to the record. SDIL-LR 56.1(c). Pursuant to Local Rule 56.1(f), the Court can disregard any fact that is not supported with a citation to the record.

Furthermore, the Court does not find Plaintiff's failure to provide or cite to any evidence is excused by his desire for an expert witness. Plaintiff appears to believe that expert discovery is required to demonstrate how his condition following his hospitalization impacted his daily activities, including his ability to file a grievance. (Doc. 39, p. 10). But at no time did he notify the Court that such discovery was needed, and "expert testimony is not always necessary" or even admissible. *Knight v. Grossman*, 942 F.3d 336, 341 (7th Cir. 2019). It is not clear why Plaintiff's own testimony would be insufficient to defeat summary judgment and show that the grievance process was unavailable. *See Wilborn*, 881 F.3d at 1005–06 (finding that the plaintiff needed to "provide evidence that he was 'physically unable to pursue' administrative remedies while in the infirmary"); *Taylor v. Illinois Cent. R. Co.*, 8 F.3d 584, 586 (7th Cir. 1993) (district court may properly bar qualified expert's testimony where the issue to be decided in the case was not beyond understanding of a lay juror). Thus, Plaintiff's desire for an expert witness does not establish a genuine issue of material fact exists or rectify non-compliance with Rule 56 and Local Rule 56.1. *Peterson v. Sealed Air Corp.*, No. 86 C 3498, 1991 WL 66370, at *6 (N.D. Ill. Apr. 23, 1991) ("summary judgment is not precluded merely because a party has produced an expert to support its position" (citing *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339

(7th Cir. 1989).

That being said, when a party has failed to properly support an assertion of fact, a court has the discretion to give the party an opportunity to cure the deficiency. FED. R. CIV. P. 56(e)(1). The Court will exercise its discretion here. Wexford does not appear to dispute that Plaintiff was hospitalized for over two months, and that fact alone calls into question the seriousness of Plaintiff's condition and his mental and physical state while in the hospital and when he returned to Shawnee, even without proper evidence submitted by Plaintiff. Thus, there remains a contested issue of fact regarding whether Plaintiff was prevented from preparing a grievance on his own or with the assistance of staff because of mental and/or physical impairment. *See* 20 Ill. Admin. Code 504.810(d) ("staff assistance shall be available as requested"). Plaintiff, however, will still be required to "properly support or address the facts." FED. R. CIV. P. 56(e)(1).

The Court also finds that the Seventh Circuit's reasoning in *White v. Bukowski* may be applicable to this case. *White*, 800 F.3d at 395–97 In *White,* the Seventh Circuit held that the administrative process was not available to an incarcerated woman who gave birth to a baby with birth defects. *Id.* The Seventh Circuit observed:

> The plaintiff may have had no reason to think at the time that her medical care in the jail was seriously inadequate, that it posed a threat to the fetus. By the time she discovered its inadequacy, or thought she had, which was when the baby was born with severe birth defects, it was too late for her to obtain a remedy of better prenatal care. The prenatal phase was over. Likewise it was too late to request prompt transport to the emergency room for her delivery. There was no remedy within the power of the jail to grant for the baby's birth defects.

*Id.* at 395. Similarly, here, it appears that there was not a remedy that would have helped Plaintiff after he returned from the hospital. The process could have, therefore, operated as a dead end. Whether the prison could still do something for Plaintiff in response to a grievance has not been addressed by the parties. The Court will require further briefing on this issue pursuant to Rule 56.

*See* FED. R. CIV. P. 56(f).

As there remains contested issues regarding whether Plaintiff had the capacity to utilize the grievance process and/or whether Plaintiff was even required to grieve in the first place because "no grievance could undo the damage," *see Vela v. Ind. Dep't of Corr.,* No. 16 CV 51, 2018 WL 992664, at *3 (N.D. Ind. Feb. 20, 2018), the Court cannot say as a matter of law that Wexford is entitled to summary judgment. The Motion for Summary Judgment is **DENIED**. (Doc. 30).

## INTERTWINEMENT

The Court must next determine whether it can address these factual disputes on exhaustion without the participation of a jury. Historically, if a prisoner raised "sufficient factual allegations demonstrating a genuine dispute as to whether the administrative remedies were available to him," the district court would conduct an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve the dispute. However, in *Perttu v. Richards*, the Supreme Court held that an inmate is entitled "to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." 605 U.S. 460, 468 (2025). Because the Court has requested further briefing under Rule 56, the Court will reserve ruling on whether the exhaustion disputes are intertwined with the merits of Plaintiff's claims until it has fully heard from the parties.

## DISPOSITION

For the reasons stated above, the Motion for Summary Judgment filed by Wexford is **DENIED**. (Doc. 30). The Court finds that there are debatable factual issues regarding whether the administrative process was available to Plaintiff.

Plaintiff has until **October 20, 2026,** to cure the deficiencies in its response and properly support his assertions of fact. *See* FED. R. CIV. P. 56(e)(1). Wexford has until **November 3, 2026**,

to file a reply brief.

Pursuant to Federal Rule of Civil Procedure 56(f), the parties have until **October 27, 2026,** to address whether Plaintiff's administrative remedies were effectively unavailable because nothing could have been done administratively to remedy his situation. *See White*, 800 F.3d at 396. The parties are given two weeks to file responses.

In the alternative to the briefing schedule above, Wexford may file notice with the Court withdrawing its affirmative defense of failure to exhaust on or before **October 13, 2026**.

**IT IS SO ORDERED.**

**DATED: September 29, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**